UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

PENN NATIONAL MUTUAL CASUALTY ]
INSURANCE COMPANY,             ]
                               ]
    Plaintiff(s),              ]
                               ]
vs.                            ] CV02-CO-02966-E
                               ]
GARY MITCHELL d/b/a GARY MITCHELL ]
ROOFING; THOMAS SALLAS, et al., ]
                               ]
    Defendants.                ]

MEMORANDUM OF OPINION

I.  INTRODUCTION.

Penn National Mutual Casualty Insurance Company ["Penn National"] filed the present declaratory judgment action seeking to resolve certain coverage issues arising out of a state court action filed in Talledega County, Alabama, by Thomas Sallas ["Mr. Sallas"] against Gary Mitchell d/b/a Gary Mitchell Roofing ["Mitchell Roofing"] and Piggly Wiggly for injuries he sustained on March 15, 2002, when he fell from the roof of a Piggly Wiggly grocery store. [Compl.] Before the court are cross-motions for summary judgment, filed by Defendants on July 25, 2003, [Doc. # 29] and Plaintiff on

October 3, 2003. [Doc. # 42.] The issues raised in the motions have been fully briefed by both parties, and are now ripe for decision. Upon due consideration, the court is of the opinion that Penn National's motion for summary judgment is due to be granted and Gary Mitchell d/b/a Gary Mitchell Roofing and Thomas Sallas' joint motion for summary judgment is due to be denied.

II. FACTS.[1]

Mitchell Roofing has been in business since 1994, performing commercial roofing services. [Mitchell Dep. Pl.'s Ex. 4 at 10.] Mitchell Roofing does not withhold taxes on wages to workers, but instead provides them with a 1099 form. [Mitchell Dep. Pl.'s Ex. 4 at 18-20, 53, 73.] Mitchell Roofing purchased workers' compensation insurance approximately one year after opening and cancelled it two years later because it could not afford it. However, it did reacquire workers' compensation insurance after

---

[1] The facts set out below are undisputed unless otherwise noted, and are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts must be resolved in favor of the nonmoving party. See Info. Sys. & Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund, 17 F.3d 1386, 1400 (11th Cir. 1994).

Mr. Sallas was injured. [Mitchell Dep. Pl.'s Ex. 4 at 14-15.] Mitchell Roofing submitted a written proposal to Piggly Wiggly which stated, "Our workers are fully covered by workmen's compensation insurance. We are covered by Liability Insurance." [Pl.'s Mot. Summ. J. Ex. 6.]

Mr. Sallas began working for Mitchell Roofing in 2000. [Sallas Dep. Defts.' Ex. A at 13.] Both Mr. Mitchell and Mr. Sallas testified that they understood Mr. Sallas would work as an independent contractor. [Sallas Dep. Defts.' Ex. A at 20-23; Mitchell Dep. Defts.' Ex. B at 72-73.] Mr. Sallas' pay ranged from $8.50 per hour when he started, to $11.00 per hour as of the date of his accident. [Sallas Dep. Defts.' Ex. A at 67.] The hourly rate for workers was determined by their experience and the quality of their work. [Mitchell Dep. Defts.' Ex. B at 83.] If a worker worked more than forty hours in a week, he was paid overtime. [Mitchell Dep. Defts.' Ex. B at 92.] Mr. Sallas testified that he was paid weekly regardless of whether Mitchell Roofing was paid for the job. [Sallas Dep. Defts.' Ex. A at 61-62.] He further testified that he worked exclusively for Mitchell Roofing, except for a few side jobs he performed in the evenings and on weekends for friends and

acquaintances, for which he received $20 or $30. [Sallas Dep. Defts.' Ex. A at 26; 65-66.]

Mitchell Roofing supplied most of the materials and some tools used on projects. [Mitchell Dep. Pl.'s Ex. 4 at 73.] Mitchell Roofing also provided all the safety equipment used on each job. [Mitchell Dep. Pl.'s Ex. 4 at 78.] Mr. Sallas did not decide what materials would be used on a particular project. [Sallas. Dep. Pl.'s Ex. 5 at 47.] The workers would determine what time to begin work on a given workday except when an owner required the work to be done during certain hours, the owner would tell Gary Mitchell and it would be done then. [Mitchell Dep. Defts.' Ex. B at 86.] The workers also determined when to take breaks and lunch but they were not paid during their lunch breaks. [Mitchell Dep. Defts.' Ex. B at 87.]

Gary Mitchell would make assignments on a day-to-day basis about what needed to be done on that day on that project. [Mitchell Dep. Defts.' Ex. B at 88.] At times, Mitchell Roofing would have a number of jobs going at once. [Sallas Dep. Pl.'s Ex. 5 at 80.] Gary Mitchell would sometimes instruct Mr. Sallas as to which site to go to on a given day. [Sallas Dep. Pl.'s Ex. 5 at 80.] Mr. Sallas testified during his deposition:

> Q. Did he occasionally call you, for instance, the day before and say, instead of going to this job, I'd like you to go to this other one?
> A. Yes.
> Q. Okay. Did he sometimes have more than one job going on at a time?
> A. Yes.
> Q. Okay. So you kind of relied on Mr. Mitchell to make sure that you were in the right place at the right time or at least get some direction from him as to where you needed to go?
>
> Mr. Middlemas: Object to the form of the question.
>
> Q. Is that true? Do you want me to ask it again?
> A. Yes.
> Q. Did you rely on Mr. Mitchell to tell you which job site to go to each day, or did he on occasion provide you with information about going to job sites?
> A. Yes, he did often advise me of where and when.
> Q. And that circumstance would come up perhaps when he had more than one job going on, and he wanted you to go instead to a different job site? Did that happen on occasion?
> A. Yes. I think.
> Q. But he would communicate with you on a fairly routine basis as to where you needed to be?
> A. Yes.

[Sallas Dep. Pl.'s Ex. 5 at 80-82.]

> Q. And you relied upon him to get you to the right place or tell you where to go at the right time?

>   Mr. Middlemas: Object to the form of the question.
>
> A.  Yes. I relied on Mr. Mitchell, but I also relied on myself because I knew where I was supposed to be and when I was supposed to be there.
> Q.  And if there was any change in that, Mr. Mitchell would let you know?
> A.  Correct.

[Sallas Dep. Pl.'s Ex. 5 at 82.]

Gary Mitchell also stopped by the job sites for about an hour twice a day to oversee the work. [Mitchell Dep. Defts.' Ex. B at 80-81.] Mr. Mitchell testified that if a job was not done quickly enough, or the materials were used incorrectly, or the work did not meet his expectations, he would bring it to the workers' attention. [Mitchell Dep. Defts.' Ex. B at 89.] Mr. Sallas testified that he took Mr. Mitchell's suggestions on performing a job because Mr. Mitchell "didn't have to employ [him]." [Sallas Dep. Defts.' Ex. A at 73.]

At the time of Mr. Sallas' injury, Mitchell Roofing was insured by Penn National under commercial general liability policy number CL9 010 6603. [Compl. ¶ 10.] The policy states in pertinent part:

> A.  Insuring Agreement
>     (a) We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this

insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

B. Exclusions
This insurance does not apply to:
(d) Workers' Compensation and Similar Laws
Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.
(e) Employer Liability
"Bodily injury" to:
(1) An "employee" of the insured arising out of and in the course of:
(a) Employment by the insured; or
(b) Performing duties related to the conduct of the insured's business;
This exclusion applies:
(1) Whether the insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

[Pl.'s Mot. Summ. J. Ex. 2].

Mr. Sallas filed the underlying action in the Circuit Court of Talladega County, Alabama, on September 24, 2002, against Mitchell Roofing, Piggly

Wiggly, and other fictitious parties. [Pl.'s Mot. Summ. J. Ex. 1.] Penn National is not a party to the underlying state court action.

Mr. Sallas alleges in the underlying state court action that Mitchell Roofing and Piggly Wiggly were the general contractors and/or subcontractors of the job site where his injuries occurred. [Pl.'s Mot. Summ. J. Ex. 1] Mr. Sallas claims that Mitchell Roofing negligently and/or wantonly failed to supervise and control the work being performed and/or negligently and/or wantonly failed to provide a safe workplace, which was the proximate cause of his injuries. [Pl.'s Mot. Summ. J. Ex. 1.] Mr. Sallas further claims that Mitchell Roofing breached and/or violated contracts and/or agreements with the owner, lessor, or lessee of the premises whereby Mitchell Roofing would provide for the safety of persons working on the premises and/or properly supervise and control the manner and methods of the work being performed on the premises, to which Mr. Sallas claims he was a third-party beneficiary. [Pl.'s Mot. Summ. J. Ex. 1.] The complaint seeks compensatory and punitive damages. [Pl.'s Mot. Summ. J. Ex. 1.]

On June 3, 2003, an order was entered with the consent of Mr. Sallas in the underlying state court action granting Defendant Gary Mitchell d/b/a Gary Mitchell Roofing's Motion to Deem Facts Admitted. [Defs.' Mot. Summ. J. Ex. 3.] The specific fact deemed admitted by the Circuit Court was that at the time of Mr. Sallas' accident, he was an independent contractor and not an employee of Gary Mitchell Roofing. [Defs.' Mot. Summ. J. Ex. 3.]

III.   STANDARD.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support

of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV. DISCUSSION.

Defendants Mitchell Roofing and Thomas Sallas seek summary judgment on their claim that Mr. Sallas was an independent contractor at the time of his accident and thus covered under the Penn National policy. Penn National, however, seeks summary judgment on its claim that Mr.

Sallas was instead an employee at the time of his injuries and therefore it owes no duty to defend or indemnify Mitchell Roofing.

A.    Employment Status.

To determine whether an individual is an employee or independent contractor, Alabama courts routinely apply the "right-of-control" test and consider "(1) direct evidence of the right or exercise of control; (2) the method of payment used; (3) whether the alleged principal had the right to terminate employment; and (4) the right to control another's time." *Dickinson v. City of Huntsville*, 822 So. 2d 411, 416 (Ala. 2001).

Penn National argues that the totality of the facts surrounding the relationship between Mr. Sallas and Mr. Mitchell evidences an employer-employee relationship between the two. To support its assertion, Penn National points to Gary Mitchell's assignment of daily tasks to the workers; his daily visits to work sites; his ability to determine which work site the workers would go to on a given day; his right to terminate workers; and his method of paying wages to workers according to experience and quality of work.

Defendants Mitchell Roofing and Thomas Sallas argue that their intentions were not to form an employer-employee relationship but rather they verbally agreed that Mr. Sallas would act as an independent contractor. However, to determine whether a person is an employee or independent contractor, the Alabama Supreme Court has held that the "right-to-control" test is proper, concluding that "[h]ow the parties characterize the relationship is of no consequence; it is the facts of the relationship that control." *Martin v. Goodies Distr.*, 695 So. 2d 1175, 1177 (Ala. 1997). Other than their mutual understanding that Mr. Sallas was to be an independent contractor, Defendants argue no facts in opposition to Plaintiff's motion for summary judgment.

In the instant case, Mr. Mitchell purchased all of the materials; furnished tools; made daily assignments; visited the work site at least twice daily to oversee the work; instructed the workers regarding time, quality of work, and use of materials; set wages and gave raises commensurate with experience and quality of work performed; paid workers overtime if they worked more than forty hours per week; and paid workers regardless of whether he was paid for the job. Further, Mr. Sallas stated that he acted

on Mr. Mitchell's suggestions on how to do a job better because he knew Mr. Mitchell did not have to employ him.

These undisputed facts show that Gary Mitchell retained the "right-of-control" over the work performed by Mr. Sallas and other workers. The court is of the opinion that summary judgment on this issue is warranted as there exist no genuine issue of material fact between the parties. Based on the facts before the court, a reasonable trier of fact could only find that Mr. Sallas was an employee of Mitchell Roofing. Therefore, the court concludes that at all relevant times, Mr. Sallas was an employee of Mitchell Roofing rather than an independent contractor.

B.   The Preclusive Effect of the Consent Decree.

Defendants assert alternatively that Penn National should be estopped from bringing this declaratory action as the issue of whether Thomas Sallas was an employee or independent contractor has been conclusively resolved by a consent decree entered in the underlying action. Defendants argue that Penn National's declaratory judgment therefore attempts to retry this issue and, as such, goes against the "mandates of the Full Faith and Credit Act." [Defs.' Mot. Summ. J. at 9.]

"Collateral estoppel refers to the concept of 'issue preclusion' whereby a judgment '[forecloses] relitigation of a matter that has been litigated and decided.'" *Hart v. Yahama-Parts Distrib., Inc.*, 787 F.2d 1468, 1473 (11th Cir. 1986) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984)). The application of collateral estoppel requires that:

> (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier decision. In addition, the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Id.* The court is of the opinion that the requirements necessary to preclude Penn National's declaratory judgment have not been met.

The issue of whether Mr. Sallas was an employee or independent contractor was never litigated in the underlying state court action. Indeed, Mr. Sallas consented to Mitchell Roofing's Motion to Deem Facts Admitted, which resulted in the Court deeming that at the time of his accident, Mr. Sallas was an independent contractor and not an employee of Mitchell

Roofing. Therefore, as the matter was never litigated between the parties for the Court to make an ultimate decision—but was consented to instead—the requirement that the issue be actually litigated in the prior action is missing. *See* 18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure (2d ed. 2002) ("To the extent that individual issues or entire judgments rest on admission or consent ... a major element of preclusion is missing.")

What the court finds most persuasive in holding that Penn National is not estopped from bringing the instant declaratory judgment action is that Penn National never participated in the consent decree between Mitchell Roofing and Mr. Sallas. Indeed, Penn National is not even a party to the underlying state court action. Therefore, to bind Penn National to the consent decree between Mr. Sallas and Mitchell Roofing raises serious due process concerns as Penn National was not afforded a "full and fair opportunity to litigate the issue in the earlier proceeding." *Hart* at 1473; *See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729 (11th Cir. 1984) ("A judgment by consent binds the parties and those in privity with them ... A consent judgment is binding *only* upon those parties consenting thereto

... A consent decree becomes res judicata only when it is between the same parties or those in privity with them.") (citations omitted) (emphasis added). As such, the court concludes that Penn National is not precluded from pursuing this declaratory judgment action to determine the issue of coverage.

IV.   CONCLUSION.

In sum, the court is of the opinion that Penn National's motion for summary judgment is due to be granted as there is no genuine issue of material fact. Defendants Thomas Sallas and Gary Mitchell d/b/a Gary Mitchell Roofing's motion for summary judgment is due to be denied. Furthermore, the court finds that Penn National is not estopped from seeking a declaratory judgment. The court will enter an appropriate order and declaratory judgment in conformity with this memorandum of opinion.

Done, this 29 of March, 2004.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE